# Exhibit A

1  Frank E. Scherkenbach (State Bar No. 142549/ scherkenbach@fr.com)
   FISH & RICHARDSON P.C.
2  One Marina Park Dr.
   Boston, MA 02210
3  Telephone: (617) 542-5070
   Facsimile: (617) 542-8906
4
   Betty H. Chen (State Bar No. 290588 / bchen@fr.com)
5  Alana C. Mannigé (State Bar No. 313341 / mannige@fr.com)
   FISH & RICHARDSON P.C.
6  500 Arguello Street, Suite 500
   Redwood City, California 94063
7  Telephone: (650) 839-5070
   Facsimile: (650) 839-5071
8
   Attorneys for Plaintiff
9  NEXTracker, Inc.

ENDORSED
FILED
ALAMEDA COUNTY

NOV 1 3 2017

CLERK OF THE SUPERIOR COURT
By Alex R. Kosenko Jr, Deputy

10              IN THE SUPERIOR COURT OF CALIFORNIA

11                 FOR THE COUNTY OF ALAMEDA

12  NEXTRACKER, INC., a Delaware corporation,        Case No.  HG17882016

13          Plaintiff,                               COMPLAINT FOR:

14      v.                                           (1) FALSE ADVERTISING;
                                                     (2) UNFAIR COMPETITION;
15  ARRAY TECHNOLOGIES, INC.,                        (3) DEFAMATION;
                                                     (4) TRADE LIBEL;
16          Defendant.                               (5) INTENTIONAL INTERFERENCE
                                                         WITH CONTRACTUAL RELATIONS;
17                                                       AND
                                                     (6) INTENTIONAL INTERFERENCE
18                                                       WITH PROSPECTIVE ECONOMIC
                                                         RELATIONS.
19

20          Plaintiff NEXTracker, Inc. ("NEXTracker"), by its counsel and for its Complaint against

21  Defendant Array Technologies, Inc. ("ATI") for (1) False Advertising; (2) Unfair Competition; (3)

22  Defamation; (4) Trade Libel; (5) Intentional Interference with Contractual Relations; and

23  (6) Intentional Interference with Prospective Economic Relations, hereby alleges as follows:

24                  **THE PARTIES AND NATURE OF THE ACTION**

25          1.  NEXTracker was founded in 2013 to transform the solar tracking industry with

26  breakthrough technology and exceptional customer service that enables solar technology to be an

27  effective, flexible, and cost-efficient solution for power plants around the world.  Solar trackers

28

                                    **COMPLAINT**

adjust the positioning of solar panels or photovoltaic (PV) modules to increase the efficiency of their solar power capture.





2.   NEXTracker introduced key innovations to the solar tracking industry, benefiting customers with lower cost, faster installation, and greater energy production.  These innovations included the first tracker with eighty or more solar panels, the first self-grounded tracker, the first self-powered tracker, and system architecture that enabled unencumbered access to the solar array field for easy maintenance.  Customers responded quickly and favorably to NEXTracker's products as soon as they were introduced.

3.   In recognition for its impact on the solar industry, NEXTracker received the 2016 Edison Award (named after Thomas Edison), which honors the "best in innovation and excellence in the development of new products and services."  NEXTracker was also honored by *PV Magazine* with an "Array Changing" technology award for its innovative NX Fusion solar tracker.

4.   Defendant Array Technologies, Inc. ("ATI") was founded in 1989 and provides solar tracking solutions in competition with NEXTracker.  ATI was once the global industry leader.

5.   In 2014, ATI began losing significant sales to NEXTracker's innovative systems.  By 2016, NEXTracker became the market leader with a 30% market share, nearly double ATI's 17% market share.  ATI has reacted to its decreasing market share with an aggressive campaign to disparage NEXTracker and its solar tracking systems.  ATI's campaign centers on spreading false and misleading statements about the NEXTracker system and its long-term operation and maintenance costs.

6.   As a most glaring example, ATI recently commissioned, disseminated, and viciously propagated false and misleading statements from a report ***that has now been formally retracted*** by its author, TUV Rheinland PTL ("TUV").  ***Despite TUV's retraction and request for ATI to cease and desist use of the report***, ATI has opted to not only ignore the author's instructions, but has instead embarked on a widespread and hard-hitting campaign to further its dissemination.

7.   Much of NEXTracker's business depends upon its continued reputation in the marketplace as a leader in innovation with a cost-effective tracker system.  To create and maintain that market reputation, NEXTracker has invested considerable resources over many years into the development, design, engineering, and manufacturing of its solar tracker system.  NEXTracker has also expended considerable resources to educate the market, prospective customers, and customers about the NEXTracker system, its design, and its advantages.  ATI's unfair and unlawful business practice of distributing false and misleading information about NEXTracker and its system is damaging NEXTracker's reputation, especially as a technology leader.

8.   To prevent further disparagement of NEXTracker and its products and to stop further irreparable harm to NEXTracker, including to its industry reputation, ATI should be immediately restrained and enjoined from using the retracted TUV report.  ATI should also be required to pay for the monetary harm its use of the retracted TUV report has caused NEXTracker.

**JURISDICTION AND VENUE**

9. Plaintiff NEXTracker is a corporation duly organized and existing under the laws of the state of Delaware with its principal place of business located at 6200 Paseo Padre Parkway, Fremont, California 94555, in the County of Alameda.

10. On information and belief, ATI is a corporation duly organized and existing under the laws of the state of New Mexico with its principal place of business located at 3901 Midway Place NE, Albuquerque, New Mexico 87109. This Court has personal jurisdiction over ATI because California is the focal point of tortious conduct committed by ATI and of harmful effects caused by ATI's tortious conduct. Not only did ATI tortiously provoke a third party into directing harmful misrepresentations and false statements against NEXTracker, a corporation in California, but ATI tortiously perpetuated these misrepresentations and false statements in California. Additionally, in their efforts to perpetuate falsities and receive revenue from customers in California, ATI sent corporate representatives to California and participated in a conference located in San Jose, California, where they presented the findings of the TUV report. Therefore, ATI has sufficient minimum contacts within the state of California such that the exercise of jurisdiction over ATI by this Court does not offend traditional notions of fair play and substantial justice.

11. ATI's tortious conduct described in this Complaint has occurred throughout the world, including at an industry conference in San Jose, California and on the Internet. ATI's conduct was directed to NEXTracker, which is headquartered in Fremont, California, and NEXTracker has been harmed there. ATI purposefully availed itself of California by causing effects in California and through California contacts that are substantially connected to the tortious conduct that gives rise to NEXTracker's causes of action.

12. This Court has jurisdiction over this action pursuant to CCP § 410.10 and the amount in controversy is greater than $25,000.

13. Venue is proper in this judicial district pursuant to CCP §§ 395 and 395.5.

## FACTS COMMON TO ALL CLAIMS

## I.   ATI COMMISSIONED A FALSE AND MISLEADING REPORT TO SUPPORT ITS DISPARAGEMENT CAMPAIGN AGAINST NEXTRACKER

14. Rather than compete fairly in the marketplace, ATI has reacted to its decreasing market share by embarking on a vicious campaign to disparage NEXTracker and its solar tracking systems. ATI's campaign centers on spreading false and misleading statements about the NEXTracker system and its long-term operation and maintenance costs. These false and misleading statements are set forth in part in a report that has been formally retracted by its author TUV, yet ATI continues to promulgate it and its misinformation.

15. On September 8, 2017, TUV released a report entitled "Risk and Economic Analysis of Two Tracker Architectures." The report was commissioned by ATI and prepared by TUV based solely on incomplete and misleading input from ATI, without any input from NEXTracker. The TUV report claims to contain an independent and objective analysis, but includes many false and inaccurate statements about NEXTracker's system, as well as internal inconsistencies.

16. Although NEXTracker is not mentioned by name in the TUV report, the photographs used in the report make obvious to potential and existing customers, investors, and others familiar with the industry that the report is comparing the solar tracking systems of ATI (referred to in the TUV report as "Architecture 1") and NEXTracker (referred to in the TUV report as "Architecture 2"). The system in the photographs identified as "Architecture 1" is readily recognized as an ATI system because the photographs prominently show ATI's logo. Similarly, the system in the photographs identified as "Architecture 2," is readily recognized as a NEXTracker system because the photographs include NEXTracker's gear unit with its signature gold-colored paint, as well as NEXTracker's distinctive curve-shaped tube.

17. While the brands of the solar trackers discussed in the TUV report are readily identifiable, it is not readily apparent to prospective and existing customers, investors, and others in the industry that the TUV report is comparing NEXTracker's older trackers with ATI's newer trackers. Such a comparison is misleading because it does not represent the products, their design or their capabilities, as presently available to customers.

18. This misleading comparison then serves as the basis for the TUV report's conclusions about the operation and maintenance costs associated with the NEXTracker system. For example, the TUV report repeatedly falsely states that the NEXTracker system requires regular re-greasing of its slew gears. There is no required re-greasing of the NEXTracker slew gears. Using the false assumption that re-greasing is required, the TUV report puts the annual scheduled maintenance costs for NEXTracker systems as 25% more than for ATI systems. As another example, the TUV report is inconsistent in how it estimates costs associated with maintenance relating to physical access to the space between rows of solar panels, such as mowing surrounding vegetation and washing the solar panels. The TUV report acknowledges that the layout of the ATI system makes physical access to this space more difficult thereby increasing mowing costs in comparison to the NEXTracker system. In its analysis of washing costs, however, the TUV report ignores the layout difference even though the same layout difference that results in the NEXTracker system having lower mowing costs likewise results in the NEXTracker system having lower washing costs.

19. The TUV report's false statements about the NEXTracker system also serve as the basis for unfounded criticism of its design and the risks it poses. For example, the TUV report falsely describes how NEXTracker trackers in fact respond in high wind conditions. When extreme east-west wind conditions occur, the trackers position the solar panels to protect them from damage rather than to track the sun. However, the TUV report falsely states that in extreme wind conditions, NEXTracker trackers place the solar panels in a horizontal position. The TUV report then criticizes that design as increasing the likelihood of the panels being damaged by twisting. In reality, the NEXTracker system places panels at a thirty degree tilt towards the wind (not horizontally) to minimize that risk. As another example, the TUV report also repeatedly, incorrectly states that NEXTracker trackers use "gas charged" dampers. The TUV report then criticizes that design selection. The dampers used in NEXTracker trackers, however, are not gas charged and therefore do not pose the same risk as dampers that are gas charged.

## II. ATI DISPARAGED NEXTRACKER AND ITS SOLAR TRACKING PRODUCTS BY COMMISSIONING AND DISTRIBUTING THE FALSE AND MISLEADING TUV REPORT

20. Starting on the day that TUV released the TUV report and continuing to the present day—even after TUV retracted the report—ATI has used the TUV report as the centerpiece of its efforts to disseminate false and misleading information about NEXTracker and its systems, including their associated operation and maintenance costs.

21. For example, on the day that TUV released the TUV report (September 8, 2017), ATI issued a news release on PR Newswire titled "Array Technologies' [ATI's] Trackers Shown to have Lowest Cost of Ownership Driven by Highest Reliability per Independent Report" referencing the TUV report. The article was re-circulated the same day on multiple platforms. An article published a few days later at Solar Builder Magazine again referenced the TUV report and was entitled "Report by TÜV Rheinland explains how Array Technologies [ATI] trackers drive O&M [operation and maintenance] costs down 37 percent." ATI made the TUV report available for download on its website. ATI also posted a video citing the TUV report's findings on YouTube.

22. ATI showcased the TUV report at the Solar Power International ("SPI") Trade Show that occurred on September 10-13, 2017 in Las Vegas, Nevada. The SPI Trade Show is the largest and most important solar industry conference of the year. Thousands of people attend, among them many of NEXTracker's existing and prospective customers. They make purchasing decisions based on what they see and learn. ATI aggressively used the TUV report to woo potential customers during the SPI Trade Show. ATI even plastered large ads based on the erroneous TUV report on the building's columns at the SPI Trade Show.



23. On September 21, 2017, NEXTracker notified ATI that the TUV report contained false and misleading information. NEXTracker requested that ATI cease and desist from disseminating the TUV report and not refer to it in its efforts to market and sell ATI products. NEXTracker repeatedly contacted ATI and complained about ATI's use of the report, including two e-mails to ATI's outside counsel which were never responded to. Despite notice from NEXTracker of the false and misleading nature of the report, however, ATI continued to make the TUV report a centerpiece of its competitive response to NEXTracker in the marketplace.

24. On October 11, 2017, ATI's CEO (Ron Corio) spoke at the All-Energy Australia conference in Melbourne, Australia, about "Improving Utility Scale Economics: How Different Solar Tracker Architectures Can Impact LCOE," referencing the TUV report. At the All-Energy Australia conference, ATI's booth touted the flawed conclusions of the TUV report.



25. While the All-Energy Australia conference was ongoing, in mid-October, ATI cited the TUV report in an announcement on its website that "Array Technologies Adds Over 580 MW of Solar Trackers to Australian Portfolio." According to ATI's announcement, ATI's new Australian deals:

> "come on the heels of a new report in which independent analysis from TÜV Rheinland PTL LLC found that Array's trackers have unparalleled project economics as compared to competing tracker architectures. The report finds that Array's architecture provides project owners with 4 Cents/Watt DC higher pre-tax Net Present Value (NPV) and 6.7% lower Levelized Cost of Energy (LCOE), driven by 31% lower lifetime O&M costs."

The announcement also gave instructions on how to request a copy of the TUV report from ATI.

## III. TUV RETRACTED THE REPORT, BUT ATI CONTINUES TO DISSEMINATE THE REPORT

26. On or around October 25, 2017, TUV retracted its report. Such retractions are extremely rare and occur only in the event of serious concerns about errors and false statements.

27. Specifically, on October 25, 2017, TUV issued a notice to ATI that included the following directives: (i) ATI will cease and desist from any and all use, publication, or dissemination of the report, including but not limited to use of the report in the marketing of ATI's technology and/or products, (ii) ATI will remove from circulation, on its website and otherwise, any and all copies of the report, including hard copies and electronic copies, in its possession, custody, or control, and (iii) ATI will inform any and all agents and affiliates of ATI, and all

distributors, wholesalers, or retailers of ATI's technology and/or products, to cease and desist from any and all use, publication, or dissemination of the report.

28. Indeed, TUV confirmed in a letter to NEXTracker that it requested ATI to cease and desist any further use of the report:

> I write regarding our call this morning and the report dated September 8, 2017 and titled "Risk and Economic Analysis on Two Tracker Architectures" (the "Report"). TRPTL prepared and published the Report at the request of our client, Array Technologies, Inc. ("ATI").
>
> As we have discussed, TRPTL takes very seriously the allegations NEXTracker Inc. ("NEXTracker") made in its letter dated September 22, 2017 and accompanying technical memorandum. While there does not appear to be any evidence that TRPTL personnel were aware of any material inaccuracies in the Report, if there are any, and did not subjectively entertain any serious doubt about the truth of the statements in the report, TRPTL believes it is in the best interest of all parties to conduct a diligent investigation of NEXTracker's allegations about the Report and to retract the Report pending this investigation. *TRPTL has provided notice to ATI that TRPTL has retracted the Report while its investigation is taking place and pending notice from TRPTL that the Report has been re-issued or amended.*
>
> Such notice to ATI included the following:
>
> 1. ATI will cease and desist from any and all use, publication, or dissemination of the Report, including but not limited to use of the Report in the marketing of ATI's technology and/or products;
>
> 2. ATI will remove from circulation, on its website and otherwise, any and all copies of the Report, including hard copies and electronic copies, in its possession, custody, or control; and
>
> 3. ATI will inform any and all agents and affiliates of ATI, and all distributors, wholesalers, or retailers of ATI's technology and/or products, to cease and desist from any and all use, publication, or dissemination of the Report.

29. Despite the clear directives, ATI has flagrantly disregarded TUV's retraction of its report. ATI has instead continued an aggressive campaign to disseminate the false and misleading information contained in the retracted TUV report. ATI's use of the retracted report has involved all major communication platforms, including workshops at conferences, in person distribution, webinars, aggressive media ad buys, industry newsletters, ATI's own website, and social media platforms including LinkedIn, Twitter, YouTube, and Facebook. ATI's use of the retracted TUV report has significantly increased in recent weeks and is expected to continue.

30. For example, on November 2, 2017, ATI referred to the retracted TUV report and its finding in ATI's presentation titled "Trouble on the horizon: Tracker maintenance costs can impair your solar assets" at the Photovoltaic Operations & Maintenance USA 2017 Conference ("PV O&M USA") in San Jose, California. ATI failed to mention that the TUV report had been retracted. ATI also failed to mention that the TUV report was based on an outdated NEXTracker tracker. Yet, at this conference, ATI went as far as to distribute USB sticks dedicated only to the retracted TUV report. The USB stick contained the retracted TUV report itself and an excel sheet containing an "analysis tool" to compare NEXTracker's older trackers with ATI's newer trackers.



31. On November 7, 2017, ATI distributed the retracted TUV report findings at the Green Tech Media's U.S. Power and Renewables Summit conference in Austin, Texas.



32. Online articles also continue to cite to the retracted TUV report. On November 1, ATI re-posted an article by Utility Drive entitled "Not all trackers are created equal" on ATI's website,

which refers to the retracted TUV report and contains a link to a page where readers can download

the report, and posted a link to the article on its LinkedIn, Twitter and Facebook feeds.  On

November 2, EQ International Magazine published an article citing the retracted TUV report.  EQ

International Magazine is an important platform in the emerging solar tracker market in India.

33. An ATI webinar with *PV Magazine* is scheduled for November 29, 2017, during which

ATI plans to discuss the retracted TUV report.  The retracted TUV report will be the centerpiece

of the webinar.  The webinar advertisement states:

> TÜV Rheinland PTL (TÜV), an independent analyst, recently released a report on the
> economic and risk analysis of two solar tracker architectures. The first architecture in the
> study is a centralized system driven by a single motor, linked by a rotating driveline to
> multiple tracker rows. The second architecture is a decentralized system where each row
> operates as a self-contained unit with a dedicated photovoltaic (PV) panel, battery, motor,
> and other tracker system components.  This webinar will give a high-level overview of
> TÜV's report, including descriptions of the technical characteristics of each tracker
> system, followed by a failure modes and effects analysis (FMEA). We will also discuss
> TÜV's methodology to assess risk associated with component failures, and conclude with
> a Levelized Cost of Energy (LCOE) / Net Present Value (NPV) analysis, highlighting the
> economic impact of the two technologies on developers, owners, financiers, and insurers of
> utility scale solar power plants.

The webinar advertisement also features as speakers ATI's Vice President of Engineering (Mark

Preston) and Executive Chief Engineer (John Williamson):



Dr. Mark Preston
Vice President of Engineering at Array Technologies, Inc.

Mark Preston leads new product development and works with the team of
engineers to refine and optimize current mechanical systems, components, and
software products. He has enjoyed a 30- year career developing technology and
products around power electronics and electro-mechanical systems. Mark has
served in executive roles at GE, Northern Power Systems, Glacier Bay, MegaWatt
Solar, Vestas, and Innovus Power. Mark is the author of more than 10 publications
and he has been granted 18 patents. He holds a BS in Mechanical Engineering
from the University of Massachusetts and a DPhil in electrical, electronic, and
control engineering from the University of Sussex (England).



John Williamson
Executive Chief Engineer at Array Technologies, Inc.

John Williamson is the executive chief engineer for Array Technologies, Inc.,
where he leads a team of engineers of various disciplines as they optimize
mechanical systems, components, and software for Array products. In his years
at Array, he has been an integral part of the success and expansion of the
company and its core product lines. John is a registered professional engineer
and holds an MS in mechanical engineering from the University of New Mexico.

## IV. ATI'S DISPARAGEMENT IS IRREPARABLY HARMING NEXTRACKER'S REPUTATION AND CAUSING OTHER SUBSTANTIAL HARM TO NEXTRACKER

34. The solar tracker industry consists of a small community where customers, investors, and other industry players converse about and pay attention to what is said at webinars, conferences, and social media.  Customers and investors are likely to share negative statements about a particular brand's solar tracker with others in the industry.

35. The solar tracker industry is relatively young, but it is currently rapidly expanding.  In particular, the Asian Pacific market (including India, China, and Japan) is expected to grow rapidly within the next ten years.  Significant growth is also expected in Central and South

America.  The market in the United States is also expected to continue growing significantly in the coming years.

36. Many of NEXTracker's current and prospective customers have already been exposed to the retracted TUV report.

37. For example, NEXTracker customers became aware of the TUV Report from ATI while attending the SPI conference held September 10-13, 2017, in Las Vega, Nevada.  More recently, as noted above, at the PV O&M USA 2017 conference on November 2, 2017, in San Jose, California, ATI discussed the retracted TUV report with NEXTracker existing and potential customers and gave them the retracted report and ATI materials touting it.

38. As another example, through EQ International Magazine, potential customers in India have been exposed to the retracted TUV report.  India is an emerging market where NEXTracker has been mobilizing to be a first-mover.  On information and belief, potential customers in Australia also have been exposed to the retracted TUV report; Australia is another emerging market where NEXTracker has been mobilizing to be a first-mover.

39. The retracted TUV report has already caused NEXTracker significant reputational harm.  Current customers have not only notified NEXTracker that they have read the retracted TUV report, but have also expressed serious concern over the allegations in the report.  In particular, based on false and inaccurate information, the retracted TUV report calls into question the cost-effectiveness and reliability of NEXTracker's systems.  Customers frequently choose NEXTracker over other companies due to its overall cost-effectiveness and reliability, which is at the heart of NEXTracker's brand and reputation in the community.  Current customers that have read the report have expressed concerns over the long-term cost-effectiveness and reliability of NEXTracker's systems due to the misleading allegations in the TUV report.  NEXTracker has had to spend significant effort and time to allay customer concerns created by ATI's distribution of the TUV report, as well as to obtain TUV's retraction of the TUV report.

40. On information and belief, NEXTracker has already lost or will lose lucrative business opportunities due to the TUV report.

**COUNT I**

**(False Advertising – Cal. Bus. & Prof. Code §17500 et seq.)**

41. Plaintiff NEXTracker incorporates by reference herein each and every allegation contained in Paragraphs 1 through 40, as if fully rewritten.

42. ATI offers solar trackers and related services to the public.

43. ATI publicly disseminated advertising, through its distribution of the TUV report and information contained therein, which contained statements about ATI trackers and how they compare to NEXTracker trackers which are untrue or misleading and likely to deceive a reasonable person.

44. ATI knew these statements were untrue or misleading and likely to deceive a reasonable person.

**COUNT II**

**(Unfair Competition – Cal. Bus. & Prof. Code § 17200 et seq.)**

45. Plaintiff NEXTracker incorporates by reference herein each and every allegation contained in Paragraphs 1 through 40, as if fully rewritten.

46. ATI engaged in an unlawful business practice when it intentionally interfered with NEXTracker's contractual and prospective economic relations.

47. ATI engaged in an unfair business practice when it disseminated the TUV report and information based on that report which contained false and misleading information about ATI's competitor NEXTracker.

48. ATI engaged in a fraudulent business practice and unfair, deceptive, untrue and misleading advertising when it disseminated the TUV report and information based on that report which contained false and misleading information that is likely to deceive a reasonable person into believing NEXTracker offers an inferior product to ATI.

**COUNT III**

**(Defamation)**

49. Plaintiff NEXTracker incorporates by reference herein each and every allegation

15

**COMPLAINT**

1   contained in Paragraphs 1 through 40, as if fully rewritten.

2       50. The TUV Report contains numerous false statements about the NEXTracker system,

3   referred to as Architecture 2 in the TUV Report.  These false statements include the requirement

4   that NEXTracker System's slew gears be re-greased, that the NEXTracker system uses "gas

5   charged" struts, and that the NEXTracker system places modules in a horizontal position during

6   extreme wind conditions.  The NEXTracker system's slew gears do not require re-greasing,

7   NEXTracker's system does not use "gas charged" struts, and the NEXTracker system does not

8   place modules in a horizontal position during extreme wind conditions.

9       51. ATI published these false statements to persons other than NEXTracker, including

10  NEXTracker's customers and potential customers, and others in the solar tracker industry

11  (collectively, "industry players"), by disseminating the TUV report in person (at conferences and

12  workshops), through press (including industry newsletters), and online (through ATI's website and

13  social media).

14      52. Based on photographs of distinctive identifiers of the NEXTracker systems included in

15  the TUV Report, these industry players understood that the false statements in the TUV report

16  were about NEXTracker and the NEXTracker system.

17      53. Based on the false statements in the TUV Report, industry players reasonably

18  understood NEXTracker's products to be more expensive to operate and maintain than ATI's

19  products and to pose problematic design risks.

20      54. False statements in the TUV Report explicitly and implicitly attacked NEXTracker's

21  corporate reputation as an industry leader and an innovative developer of cutting-edge solar

22  technology. These statements demean NEXTracker's competence as an innovator and

23  manufacturer of solar trackers and an innovator of solar technology.

24      55. On information and belief, ATI failed to use reasonable care to determine the truth or

25  falsity of statements in the TUV Report.  On information and belief, ATI made these statements,

26  especially those after receipt of the cease and desist letter from NEXTracker and after TUV's

27  retraction of the TUV Report, with malice.

28

56. NEXTracker has suffered direct financial harm because of damage to its corporate reputation caused by ATI. On information and belief, NEXTracker has lost at least one lucrative business opportunity as a result of ATI's false statements.

57. On information and belief, the damage to NEXTracker's corporate reputation, caused by ATI's publication of false statements, was a substantial factor in causing NEXTracker to at least on business opportunity.

## COUNT IV

### (Trade Libel)

58. Plaintiff NEXTracker incorporates by reference herein each and every allegation contained in Paragraphs 1 through 40, as if fully rewritten.

59. In distributing the TUV Report and related materials, ATI made untrue statements that were clearly and necessarily understood by those in the industry to disparage the quality of NEXTracker's system. These untrue statements include that NEXTracker's System was more expensive to operate and maintain than ATI's products because of maintenance costs associated with re-greasing the NEXTracker system's slew gears, as well as that the NEXTracker system poses problematic design risks because it allegedly places solar modules in a horizontal position during extreme wind conditions and uses "gas charged" struts. The NEXTracker system's slew gears do not require re-greasing, the NEXTracker system does not place solar modules in a horizontal position during extreme wind conditions, and NEXTracker's System does not use "gas charged" struts.

60. By disseminating the TUV Report at conferences and on the Internet, ATI published untrue statements about NEXTracker's System to persons other than NEXTracker, including prospective customers, customers, and others in the solar tracker industry.

61. On information and belief, ATI knew the statements concerning NEXTracker and its tracker were untrue, or acted with reckless disregard of their truth or falsity, especially after receipt of the cease and desist letter from NEXTracker and after notification from TUV that TUV retracted its report.

17
**COMPLAINT**

62. On information and belief, ATI knew, or should have recognized, that prospective customers and customers might act in reliance on untrue statements in the TUV Report to cause NEXTracker financial loss.

63. On information and belief, NEXTracker has suffered direct financial harm because its prospective customers and customers acted in reliance on ATI's false statements.  On information and belief, NEXTracker has already lost or will lose lucrative business opportunities due to the TUV report.

64. ATI's untrue statements were a substantial factor in causing NEXTracker's harm.

## COUNT V

### (Intentional Interference with Contractual Relations)

65. Plaintiff NEXTracker incorporates by reference herein each and every allegation contained in Paragraphs 1 through 40, as if fully rewritten.

66. There was a contract between NEXTracker and one or more of its existing customers.

67. On information and belief, ATI knew of those contracts.

68. ATI's conduct in its campaign to spread misleading and false information about NEXTracker and its systems made performance of NEXTracker's contracts more expensive and difficult for NEXTracker.

69. On information and belief, ATI knew that disruption of performance was certain or substantially certain to occur.

70. NEXTracker has been harmed.

71. ATI's conduct was a substantial factor in causing NEXTracker's harm.

## COUNT VI

### (Intentional Interference with Prospective Economic Relations)

72. Plaintiff NEXTracker incorporates by reference herein each and every allegation contained in Paragraphs 1 through 40, as if fully rewritten.

73. NEXTracker and at least one of its existing or prospective customers were in an economic relationship that probably would have resulted in an economic benefit to NEXTracker.

**COMPLAINT**

74. On information and belief, ATI knew of this relationship.

75. ATI engaged in the dissemination of false and misleading statements about NEXTracker and its systems.

76. By engaging in this conduct, ATI intended to disrupt or knew that disruption of the NEXTracker's relationships with its existing or prospective customers was certain or substantially certain to occur.

77. NEXTracker's relationships with its existing and prospective customers have been disrupted.

78. On information and belief, NEXTracker has already lost or will lose lucrative business opportunities due to the TUV report.

79. ATI's conduct was a substantial factor in causing NEXTracker's harm.

**PRAYER**

WHEREFORE, Plaintiff NEXTracker hereby respectfully requests that the Court grant the following relief:

a.      Judgment be entered in favor of NEXTracker on all counts in its Complaint;

b.      Compensatory, consequential, and incidental damages in an amount to be determined at trial, but which is in excess of $25,000, exclusive of interest and costs;

c.      Exemplary or punitive damages for malicious defamation of NEXTracker in an amount to be determined at trial;

d.      Restitution for ATI's unjust enrichment, at NEXTracker's expense, resulting from ATI's false and misleading advertising and unfair competition;

e.      A temporary restraining order, as well as preliminary and permanent injunctions restraining ATI from continuing to engage in the unfair and unlawful business practices described herein, including prohibiting ATI or its agents from distributing or commenting on in any manner the retracted TUV report, and prohibiting ATI or its agents from falsely disparaging NEXTracker or its products in any way;

f.      Statutory interest in an amount to be proven at or before trial;

19
**COMPLAINT**

g.     Reasonable attorney's fees and legal costs;

h.     Costs, as permitted; and

i.     Such other relief in law or in equity to which Plaintiff NEXTracker is entitled

and/or as may be just and required under the circumstances of the case.

Dated: November 13, 2017                              FISH & RICHARDSON P.C.

By: _____

Betty H. Chen

Attorneys for Plaintiff
NEXTRACKER, INC.