UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTRACKER, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARRAY TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 3:17-cv-06582-JD <br><br> **ORDER RE TRO APPLICATION** <br><br> Re: Dkt. No. 10 |

On the record before the Court, plaintiff's application for a temporary restraining order is **DENIED**. The Court will set an expedited preliminary injunction hearing as a next step.

Plaintiff NEXTracker, Inc. ("NX") and Defendant Array Technologies, Inc. ("ATI") are competing suppliers of solar tracking devices. Dkt. No. 1-1 ¶ 4. Solar trackers "adjust the positioning of solar panels . . . to increase the efficiency of their solar power capture." Dkt. No. 1-1 ¶ 1. In September 2017, TUV Rheinland PTL, LLC ("TUV"), which appears to be a non-governmental testing and assessment organization, issued a report comparing the operational costs of two different solar tracking architectures. Dkt. No. 10 at 2. The TUV report concluded that "Architecture 1" -- a tracker "driven by a single motor linked by a rotating driveline to multiple tracker rows" -- is associated with lower lifetime operational costs than "Architecture 2" -- "a system where each row operates as a self-contained unit with . . . dedicated tracker system components." Dkt. No. 7-3 at 12, 97. The report makes other comments that portray the Architecture 2 device less favorably than the Architecture 1 product. Although the report does not use brand names for the products it discusses, NX says that "Architecture 1" is ATI's technology and that "Architecture 2" shows an NX product.

The TUV report appears to have ignited a firestorm of debate and protest between NX and ATI. In an apparent response to communications from NX, TUV retracted the report on October

25, 2017. Dkt. No. 1-1 ¶ 26. NX alleges that ATI has widely disseminated the report both before and after the retraction through a variety of channels including media ad buys, industry newsletters, trade events, and social media platforms like YouTube, Twitter and Facebook. *See, e.g., id.* ¶ 29. The event precipitating the TRO application is NX's understanding that ATI plans to make the report a "centerpiece" during a November 29 webinar with PV Magazine that will be "well-attended, both locally and globally." Dkt. No. 8 at 1.

NX filed a complaint in California Superior Court alleging that ATI has used the TUV report to make false and misleading statements that disparage NX systems. Dkt. No. 1-1. It brings claims for trade libel, defamation, unfair competition and false advertising under California state law, intentional interference with contractual relations, and international interference with prospective economic relations. No federal claims are alleged. The complaint was removed to this Court without objection on diversity grounds. NX filed a noticed TRO application seeking an order to block ATI from using the TUV report at the November 29 event. Dkt. No. 8. ATI opposes the request. Dkt. No. 10.[1]

**DISCUSSION**

**I.     Legal Standard**

A temporary restraining order enjoins conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). When "notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-CV-06071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017).

Injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

---

[1] Shortly after filing its initial opposition at Dkt. No. 10, ATI asked for leave to file an amended brief. Dkt. No. 14. Since the TRO is denied, the motion is denied as moot.

2

2011) (quoting *Winter*, 555 U.S. at 20). Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. This reflects our circuit's "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*; *see also Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014). In all cases, as an "irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (internal quotation and citation omitted).

## II. Likelihood of success on the merits

On the record before the Court, NX has not shown a likelihood of success on the merits or a serious litigation question. NX's application for a TRO rests on its false advertising, trade libel, and defamation claims, which all require a showing of statements that are false or misleading to a reasonable consumer. *See, e.g.*, *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (UCL); *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002) (trade libel).

NX has not demonstrated that a false or misleading statement can be found here. As NX concedes, the TUV report does not mention NX or its products by name. Dkt. No. 1-1 ¶ 16. The TUV report discusses only two types of generic systems that it calls "Architecture 1" and "Architecture 2," and in ATI's own marketing materials, ATI has continued to discuss the report in those same generic terms. *See, e.g.*, Dkt. No. 7-20 at 2 (the report "examined the two most common types of tracker architectures" and "Architecture 1" is "the type of system Array Technologies manufactures"); Dkt. No. 7-5 at ECF p.3 (ATI's tracker "less likely to experience catastrophic failure during wind events than single-row competitors that rely on stow"); Dkt. No. 7-10 (discussing "benefits of Array's tracking technology over the competing architecture"). ATI represents that "numerous other manufacturers in the industry . . . sell solar tracker products that also utilize 'Architecture 2.'" Dkt. No. 10 at 5. NX does not argue otherwise.

3

Nevertheless, NX argues that readers of the report will infer that it is really about NX systems in particular, rather than "Architecture 2" systems in general. It believes that because the report features photographs of the "Architecture 2" device with NX's "signature gold-colored paint" and "distinctive curve-shaped tube." Dkt. No. 1-1 ¶ 16. The gold component matches NX's gold logo, and the curved piping along with the gold component "have been prominently displayed together in NEXTracker advertising." Dkt. No. 7-2 at 5-6. ATI agrees that the report contains photographs of an NX product. Dkt. No. 10 at 5.

That may all be true but it does not tip the likelihood of success in NX's favor. NX argues that the TUV report is false and misleading in two ways. First, the system described as "Architecture 2" is a three-year-old NX design, whereas the system described as "Architecture 1" is ATI's latest tracker. Dkt. No. 8 at 5; Dkt. No. 7-17 at ECF p.4. According to NX, this is misleading because consumers will incorrectly assume that the report compares the newest ATI tracker with the newest NX tracker. Dkt. No. 8 at 10. Second, NX argues that the report mischaracterizes NX systems: for example, contrary to the report, their "slew gears do not require re-greasing," they "do not place solar modules in a horizontal position during extreme wind conditions," and they "do not use 'gas charged' struts." Dkt. No. 8 at 5.

The facts in evidence do not show that these inferences and statements are likely to be false or misleading, or that there is a serious question in that respect. NX says consumers will know from visual clues that "Architecture 2" in the report refers to an NX system, and has submitted declarations from its employees stating that NX features a gold component and curved piping in promotional materials. *See, e.g.*, Dkt. No. 7-2 at 5-6. But NX offers no evidence showing that consumers do, in fact, identify those features with NX products, or that the gold paint and curved piping have taken on a clear association with NX.

But even assuming purely for discussion that people in the solar industry associate the "Architecture 2" photographs with NX, NX does not prevail. The report does not purport to compare systems of the exact same product generation or age, and is not false or misleading just because it compares a recent ATI model with an NX model from three years ago. Such a comparison may even be useful in the solar industry because, as NX itself argues, "Solar trackers

4

are a long-term investment -- they can remain operational for many decades." Dkt. No. 11 at 3. It also seems possible that solar industry participants savvy enough to identify "Architecture 2" as an NX system might also recognize that the featured device was not necessarily the latest model.

Nor does the record support a finding that the report mischaracterizes the older NX system. NX says the report falsely states that its slew gears need re-greasing, its trackers place solar modules in a horizontal position during extreme wind conditions, and that the trackers use gas-charged struts. Dkt. No. 8 at 5. But NX never clarifies whether it is referring only to its newest trackers, or whether it is referring to all NX trackers ever made. It is not at all clear whether NX believes those statements are false just for its latest devices or for any or all prior ones. In contrast, ATI in its opposition brief represented that "the exemplary 'Architecture 2' tracker design that TUV photographed and included in the Report did have gas-charged dampers, its slew gears did need lubrication, and its panels did stow horizontal in high wind events." Dkt. No. 10 at 5. That statement went uncontested in NX's reply brief. Dkt. No. 11. On these facts, the Court cannot find that the report likely made false claims about the older NX system.

While NX emphasizes that TUV "retracted the report pursuant to an investigation," Dkt. No. 8 at 6, this adds little to the TRO analysis. The record does not indicate that TUV had independent concerns about the veracity of the report. Rather, the evidence shows that TUV may have retracted its report due to NX's heated objections. *See, e.g.*, Dkt. No. 7-18 at ECF p. 2 ("While there does not appear to be any evidence that [TUV] personnel were aware of any material inaccuracies in the report, if there are any, and did not subjectively entertain any serious doubt about the truth of the statements in the report, [TUV] believes it is in the best interest of all parties to retract the Report and conduct a diligent investigation of NEXTracker's allegations about the Report.").

**III. Likelihood of irreparable harm**

Because NX has not shown the irreducible minimum of likely success on the merits or a serious litigation question, the TRO is properly denied on that ground alone. For the sake of completeness, the Court also finds that NX has not demonstrated that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A mere possibility

5

of irreparable injury will not suffice. *Id.* And injunctive relief is not available for past injuries. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

NX argues that it will lose business opportunities and its goodwill will suffer as ATI continues to discuss the report. But it appears that much of that harm is likely to have already occurred. According to NX, "(i) the report has already received significant attention in the solar tracker community, (ii) NX's customers have already seen the report, and (iii) emerging markets have already been exposed to the report." Dkt. No. 8 at 3. ATI has "aggressively" disseminated the TUV report, "broadly covering all major communication platforms," and has even distributed the report via USB stick at industry conferences. Dkt. No. 8 at 6-8. The report has now been circulated to so many members of the solar industry that a TRO will do little to contain NX's potential injury. NX argues that a TRO will be effective on the margins, but fails to quantify the reputational injuries it will suffer if ATI continues to distribute the report. Consequently, NX has failed to establish a likelihood of future irreparable injury. *See, e.g.*, *ET Trading, Ltd v. ClearPlex Direct, LLC*, No. 15-CV-00426-LHK, 2015 WL 913911, at *5 (N.D. Cal. Mar. 2, 2015) ("no evidence that Defendants' presence at the trade show would cause Plaintiff further reputational injury or deter potential customers").

**CONCLUSION**

On the current record, NX has not demonstrated a likelihood of success or serious questions on the merits, nor has it shown a likelihood of irreparable harm. On that basis, the Court denies NX's request for a temporary restraining order. The Court reaches no conclusions on the two remaining *Winter* factors.

The Court sets a hearing on a preliminary injunction motion for **December 21, 2017,** at 2:00 p.m.  The parties should work out a briefing schedule that gives the Court at least one full week between the reply brief and the hearing.  The parties may propose a date in January 2018 if this hearing date is not feasible for some reason.

**IT IS SO ORDERED.**

Dated:  November 22, 2017

JAMES DONATO
United States District Judge